NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2013
_____

UNITED STATES OF AMERICA

v.

AMAECHI ANTWAN AHUAMA,
                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-13-cr-00038-003)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 24, 2017

Before:  SMITH, *Chief Judge*, JORDAN, and ROTH, *Circuit Judges*.

(Filed: April 19, 2017)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Ameachi Ahuama appeals the sentence of 48 months' imprisonment that he received after pleading guilty to money laundering. He argues, among other things, that the sentence was unreasonable. We will affirm.

## I.    Background

In April 2015, Ahuama pled guilty to laundering monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i) and(B)(ii). The charges against him arose from what is known as an "advance fee" fraud scheme, which involves sending emails that falsely tell the recipients they are owed money from overseas. When recipients respond, the con men induce them to pay fees to get access to the funds the victims believe they are owed. The fraud in this case targeted vulnerable elderly people. Ahuama's role in the scheme was to operate a "drop account" into which co-conspirators could deposit fraudulently obtained sums. Over the course of the months-long scheme, more than $1.6 million dollars passed through his account. When entering his guilty plea, Ahuama expressly admitted that he understood that the funds deposited into his drop account were derived from illegal activities.

Under § 1B1.11 of the United States Sentencing Guidelines, Ahuama's total offense level was 25, which included a two-level increase for "sophisticated laundering" pursuant to U.S.S.G. § 2S1.1(B)(3). His lack of any criminal history placed him in the lowest criminal history category. The corresponding sentencing range under the guidelines was 57 to 71 months. During the sentencing hearing, the District Court

2

departed downward to level 23, which brought the guidelines range to 46 to 57 months.[1]

The Court then imposed a 48-month sentence and ordered restitution.

## II.    Discussion[2]

Ahuama challenges his sentence on five grounds.  We address each in turn.

---

[1] In his sentencing memorandum and at the hearing, counsel for Ahuama did not make a motion for downward departure and only sought a variance.  The Court nonetheless stated that a two-level departure was necessary to avoid sentencing disparities between Ahuama and his co-defendants.  The Court also found that the limited departure was appropriate because Ahuama had participated in electronic monitoring since his plea, and Ahuama submitted a letter to the Court indicating his desire to change his life.

We note that sentencing disparities and a defendant's conduct after a plea are grounds for a variance, not typically considerations for a departure from the offense level. *See* 18 U.S.C. § 3553(a) (directing courts to consider, among other factors, the "history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); *see also United States v. Brown*, 578 F.3d 221, 225-26 (3d Cir. 2009) ("Departures are enhancements of, or subtractions from, a guidelines calculation based on a specific Guidelines departure provision …. [that] require a motion by the requesting party and an express ruling by the court. Variances, in contrast, are discretionary changes to a guidelines sentencing range based on a judge's review of all the § 3553(a) factors and do not require advance notice." (internal quotation marks and citations omitted)). The parties, however, do not appeal the District Court's characterization.  And in any event, because the Court imposed a sentence below the guidelines range even without the departure, the error appears to be, from the defendant's perspective, harmless. *Cf. United States v. Langford*, 516 F.3d 205, 218 (3d Cir. 2008) (recognizing that there may be harmless error in the "rare case" where an incorrectly calculated guidelines range does not affect the sentencing judge's decision because the sentence is "not tied to the Guidelines range or a specific departure or variance from the Guidelines, but rather represented a discretionary sentence imposed based on 3553(a)").

[2] The District Court had jurisdiction under 18 U.S.C. § 3231; we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A.      *Unreasonableness*

First, Ahuama argues that 48 months was an unreasonable sentence[3] because the District Court did not grant a variance from the guidelines range for what he claims was his minor role in the fraud.[4]  His theory is that the Court erred by failing to address his argument that the guidelines range was unfairly inflated because of a single deposit of $1.2 million into his drop account that greatly increased the amount of the loss calculation.  While not disputing the amount, Ahuama argues that, because a significant portion came from a single deposit, the total "overstated his involvement[.]"  (Opening Br. at 12.)  Ahuama also argues more generally that he played a minor role in the scheme. He claims that "his participation did not involve sophisticated means of money laundering" because his role was "simply [to] follow[] directions in the use of a drop account at the complete direction of others," and he emphasizes his "youth and control by co-defendants."  (Opening Br. at 9, 10, 14.)  Because Ahuama made that argument in the District Court, we review the ruling for abuse of discretion.  *See United States v.*

---

[3] Ahuama argues that the sentence was substantively unreasonable, while also making reference to the procedure used to reach the sentence.

[4] As already indicated, *see supra* note 1, the claim that Ahuama should have received a variance for his minor role is distinct from his argument that he should have received a two-level downward departure from the base offense level for his minor role pursuant to U.S.S.G. § 3B1.2.  *See Brown*, 578 F.3d at 225 ("We expressly distinguish between departures from the guidelines and variances from the guidelines.").  Trial counsel for Ahuama did not make such a motion for departure before the District Court, and that failure is the basis for Ahuama's ineffective assistance of counsel claim, as discussed *infra*.  To the extent that Ahuama is arguing on appeal that the Court failed to *sua sponte* grant a departure, we review for plain error.  *See United States v. Flores-Mejia*, 759 F.3d 253, 254-55 (3d Cir. 2014) (reviewing unpreserved challenges to a sentence for plain error).  If that is his argument, it is wholly without foundation and certainly fails.

4

*Woronowicz*, 744 F.3d 848, 851 (3d Cir. 2014) ("[A] sentence's procedural and substantive reasonableness [is reviewed] under an abuse of discretion standard.") (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009)).

Procedurally, a sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review … ." *Gall v. United States*, 552 U.S. 38, 50 (2007). Functionally, "[t]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (footnote and citations omitted). In evaluating the record, we "give due deference to the district court's determination that the § 3553(a) factors, on a whole, justify the sentence." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (internal quotation marks omitted).

The record here "reflects rational and meaningful consideration" of the appropriate factors. *Grier*, 475 F.3d at 571 (citation omitted). Specifically, the Court took into account that the "[t]he offense [was] very serious" and recognized there were more than 70 victims, many of whom were elderly and particularly vulnerable to fraud. (App. at 86-87.) The Court also noted the severe victim impact – many targets of the fraud lost their life savings.

That the District Court did not comment on all of Ahuama's arguments for a variance does not mean that an unreasonable sentence was imposed. *See United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (deciding that a court's failure to give "mitigating factors the weight that [defendant] contends they deserve does not render [the] sentence unreasonable"). The Court recognized explicitly that it agreed "only in a

5

few aspects" with Ahuama's arguments for a variance. (App. at 87.) The Court did not find grounds to grant a variance but it did grant a downward departure on grounds that it deemed meritorious: to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." (App. at 87.) Under the circumstances, Ahuama has not demonstrated that the Court's sentence was unreasonable. *See, e.g.*, *United States v. Psihos*, 683 F.3d 777, 783 (7th Cir. 2012) (finding court's statements at sentencing made it clear it had rejected the defendant's arguments). Here the sentence was at the lower end of the guidelines range *after* a two-level departure was granted by the Court. Ahuama's argument that the sentence was "greater than necessary" simply has no basis in the record. (Opening Br. at 15-16.)

B.     *Sophisticated Laundering Enhancement*

Ahuama next argues that the District Court's application of U.S.S.G. § 2S1.1(B)(3), the two-level enhancement for sophisticated laundering, was erroneous. Because this argument was not made at sentencing, we review it under the plain error standard.[5] *United States v. Flores-Mejia*, 759 F.3d 253, 254-55 (3d Cir. 2014).

The guidelines provide for a two-level enhancement when a defendant is convicted under 18 U.S.C. § 1956 and the offense "involved sophisticated laundering." U.S.S.G. § 2S1.1(b)(3). The commentary to the relevant guideline defines sophisticated laundering as "complex or intricate offense conduct" pertaining to the crime, and notes

---

[5] "An error is plain if it is 'clear' or 'obvious,' 'affects substantial rights,' and 'affects the fairness, integrity or public reputation of judicial proceedings.'" *Flores-Mejia*, 759 F.3d at 259 (quoting *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (further citations omitted)).

several badges of such conduct, including: "(i) fictitious entities; (ii) shell corporations; (iii) two or more levels (i.e., layering) of transactions … or (iv) offshore financial accounts." U.S.S.G § 2S1.1. cmt. 1 n.5(A). Our precedent also provides that a district court need not expressly find the elements enumerated in the commentary; rather, the sentencing court may consider the scheme in its entirety, particularly the layers and levels of the scheme's organization, in drawing its conclusion about sophisticated laundering. *See United States v. Fish*, 731 F.3d 277, 280 (3d Cir. 2013) ("We disagree, however, that a finding of the existence of those listed facts is necessary to a determination that a particular scheme to launder money was sophisticated.").

As the government points out, both fictitious entities and shell corporations were used in this scheme. Furthermore, the scheme was "complex or intricate" in a number of ways, including how victims were contacted and how the funds were transferred through drop accounts. There was thus no error – and certainly no plain error – in the application of the "sophisticated laundering" sentencing enhancement.

C.     *Restitution*

Ahuama next alleges that the District Court's restitution hearing was scheduled outside of the temporal window specified in 18 U.S.C. § 3664(d)(5). The statute requires that, when the victim's losses are not fully ascertainable before sentencing, a sentencing court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). The Supreme Court has, however, expressly held that "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where … the sentencing court made clear

prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Dolan v. United States*, 560 U.S. 605, 608 (2010).

The colloquy among Ahuama's counsel, the Assistant United States Attorney, and the District Court at sentencing indicates that the question of restitution was settled and only the sum of that restitution remained to be determined. The Court specifically noted that the government had "submitted different restitution numbers than were set forth in the presentence report." (App. at 62.) The parties agreed to keep the calculation of the amount of restitution open for a later, final hearing.[6] Therefore, the Court's determination of the amount of restitution after the 90-day period had passed was within the bounds of the Supreme Court's direction and there was no error.

D.     *Substance Abuse Program*

Fourth, we turn to Ahuama's complaint that the District Court abused its discretion by not expressly directing the Bureau of Prisons to enroll him in a substance abuse program. Recommendations for substance abuse treatment, like recommendations for the location of confinement are just that: non-binding recommendations to the Bureau of Prisons. We lack jurisdiction to review a non-binding sentencing recommendation and therefore do not further comment on Ahuama's argument. *See United States v. Serafini*, 233 F.3d 758, 777-78 (3d Cir. 2000) (holding that a district court's recommendation for a specific place of imprisonment was a non-binding recommendation to the BOP, and thus not reviewable).

---

[6] That restitution hearing took place on August 22, 2016.

8

E.      *Ineffective Assistance of Counsel*

Finally, Ahuama claims that he was ineffectively represented by counsel during sentencing because his counsel did not seek a downward departure based on his minor role and did not challenge the two-level enhancement for sophisticated laundering. This issue is not ripe for consideration on direct appeal. If it is to be raised at all, it is a matter for collateral review. *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) (recognizing that "[i]t has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack" unless "the record is sufficient to allow determination of the issue" (citations omitted)). Consequently, we do not consider Ahuama's ineffective assistance claim.

## III.    Conclusion

For the foregoing reasons, we will affirm the sentence imposed by the District Court.