**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4320
_____

UNITED STATES OF AMERICA

v.

JEFFREY WORONOWICZ,
                                        Appellant


On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:  3-12-cr-00192-001)
District Judge:  Honorable Mary L. Cooper


Submitted under Third Circuit LAR 34.1(a)
on January 17, 2014

(Opinion filed: March 12, 2014)


Before:  RENDELL, ROTH, and BARRY, <u>Circuit Judges</u>

Theodore Sliwinski, Esquire
45 River Road
East Brunswick, NJ   08816

Counsel for Appellant

Mark E. Coyne, Esquire
John F. Romano, Esquire
Paul J. Fishman, Esquire
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ   07102-2535

Counsel for Appellee

———————

O P I N I O N

———————

**RENDELL**, Circuit Judge:

Jeffrey Woronowicz challenges the 41-month term of imprisonment to which he was sentenced after pleading guilty to a one-count Indictment charging him with counterfeiting in violation of 18 U.S.C. § 474. Woronowicz urges that the District Court clearly erred in calculating the amount of counterfeit currency attributable to him under the Sentencing Guidelines, and that his sentence is procedurally and

substantively unreasonable. For the reasons that follow, we will affirm.[1]

**I.**

In 2008, Woronowicz was convicted of four counts of willful failure to file tax returns and was sentenced to a 12-month term of imprisonment with 1 year of supervised release. He failed to comply with the terms of his supervised release, resulting in an additional 3 months' imprisonment. Woronowicz was allowed to self-surrender but failed to do so. After being arrested for failure to surrender, Woronowicz consented to have law enforcement officials search his residence. The officials discovered counterfeit currency with a face value in excess of $207,000. Approximately 90% of the bills found were completed on only one side, and $20,000 worth were completed on both sides. Authorities also discovered materials used to manufacture counterfeit currency. Woronowicz subsequently pleaded guilty to the one count Indictment charging him with counterfeiting.

At sentencing, the District Court applied a 12-level enhancement to Woronowicz's Guidelines range, pursuant to § 2B5.1(b)(1)(B) based on its calculation of the face value of the counterfeit currency as exceeding $200,000.[2] The Court rejected Woronowicz's argument that he should receive no more than a 4-level enhancement since only 10% of the

---

[1] We have jurisdiction over Woronowicz's appeal pursuant to 28 U.S.C. § 1291.

[2] Section 2B5.1(b)(1)(B) instructs to use the table in § 2B1.1 which indicates that for losses greater than $200,000, a 12-level enhancement should be applied.

3

counterfeited notes were fully completed. The Court calculated Woronowicz's total offense level as 20 and his criminal history category as IV, resulting in an advisory Guidelines range of 51 to 63 months. The Court varied downward, imposing a sentence of 41 months' imprisonment, acknowledging that the fact that many of the bills were incomplete was a mitigating factor.

## II.

### A.

We review a District Court's interpretation of the Sentencing Guidelines de novo and its application of the Guidelines to the facts for clear error. *United States v. Richards*, 674 F.3d 215, 218-20 (3d Cir. 2012).

Under § 2B5.1(b)(1)(B), the Court is to impose a sentencing level enhancement based on "the face value of the counterfeit items." *United States v. Wright*, 642 F.3d 148, 154 (3d Cir. 2011). Here, Woronowicz concedes that the face value of the currency was $207,980 but urges that incomplete bills should not be counted as "counterfeit items." He also raises arguments regarding intended loss, but we have clearly held that intended loss is irrelevant in imposing an enhancement under § 2B5.1(b)(1)(B). *Wright*, 642 F.3d at 154.[3] Though we have never explicitly ruled on whether

---

[3] Puzzlingly, Woronowicz cites our holding in *Wright* for the proposition that we have mandated "a conservative approach when ruling on sentencing enhancements." Appellant's Br. 24. Even if this were true, a strict interpretation of § 2B5.1(b)(1) would still include one-sided bills in the

4

incomplete bills should be counted in arriving at face value under § 2B5.1(b)(1) of the Sentencing Guidelines, every other court of appeals that has addressed this question has held that they should. *See United States v. Kelly*, 204 F.3d 652, 657 (6th Cir. 2000) (counting bills lacking seals and numbers under enhancement); *United States v. Webster*, 108 F.3d 1156, 1158 (9th Cir. 1997) (counting uncut bills); *United States v. Ramacci*, 15 F.3d 75, 78 (7th Cir. 1994) (counting one-sided bills); *United States v. Lamere*, 980 F.2d 506, 512-13 (8th Cir. 1992) (counting one-sided bills).[4]

Under § 2B5.1, a counterfeit item is defined as "an instrument that has been falsely made, manufactured, or altered." U.S.S.G. § 2B5.1 cmt. n.1. Note 3 of § 2B5.1 specifically excepts, "items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny," *Id.* § 2B5.1 cmt. n.3, from being counted in connection with a *different* subsection of § 2B5.1(b) – namely (b)(2)(A). In *United States v. Taftsiou*, we held that the Sentencing Commission "unambiguously limited the reach of note [3][5] to subsection (b)(2)" and that we were "not at liberty to extend its application to other subsections by

---

calculation of the face value of the counterfeit currency for the reasons explained herein.

[4] Woronowicz points to *United States v. Cho*, 136 F.3d 982 (5th Cir. 1998), as disagreeing with the *Lamere* decision. *Cho*, however, involved a completely different Guidelines section, and disagreed with *Lamere* on an issue irrelevant to the instant case—that is, whether a district court errs by considering the application notes accompanying a cross-referenced Guideline. *See Cho*, 136 F.3d at 984 n.3.

[5] At the time, the note in question was note 4.

judicial fiat alone." 144 F.3d 287, 294 (3d Cir. 1998). Therefore, we held that notes of unpassable quality *do* count towards the face value of counterfeit items under subsection (b)(1). *Id.* Incomplete bills are merely notes that could be considered to be of unpassable quality. Therefore, extending our holding in *Taftsiou*, we now hold that incomplete bills are "counterfeit items" under § 2B5.1(b)(1) and must be counted in calculating the total face value.

Woronowicz's argument that there are an "abundance of cases wherein convictions for counterfeiting were reversed because the counterfeit bills were not of passable quality," is misplaced. Appellant's Br. 15. First, the cases he relies on involved a different statute from the one at issue here—18 U.S.C. § 472 rather than § 474. *See United States v. Ross*, 844 F.2d 187 (4th Cir. 1988); *United States v. Johnson*, 434 F.2d 827 (9th Cir. 1970); *United States v. Smith*, 318 F.2d 94 (4th Cir. 1963). Unlike § 472, § 474, prohibits the possession of currency made "in whole or <u>in part</u>, after the similitude" of U.S. currency. *See Ross*, 844 F.2d at 190. Second, the cases he cites involved challenges to convictions, not challenges to sentences. Woronowicz's sentencing range is determined by the Sentencing Guidelines, not by the underlying counterfeiting statute. Since the relevant Guideline provision bases the appropriate sentencing level enhancement on the face value of the counterfeit items, and since the face value here is $207,980, the District Court did not err in applying a 12-level enhancement.

B.

We review a sentence's procedural and substantive reasonableness under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).

6

Woronowicz asserts that the District Court failed to meaningfully consider the factors enumerated in 18 U.S.C. § 3553(a) and to adequately explain the reasons for its sentence. This assertion is belied by the record. The Court provided an in depth explanation for its sentence, noting, inter alia, Woronowicz's criminal history, his refusal to comply with the law in spite of leniency previously afforded to him, the actual and potential danger posed to the community by his continued possession of the counterfeit bills, the high quality of the bills, and the fact that bills were passed in 2009, prior to his imprisonment. Contrary to Woronowicz's assertion that the Court did not account for the fact that the counterfeit bills were one-sided, the Court explicitly noted that the amount of loss used to calculate the upward adjustment under the Guidelines "may somewhat overstate the actual or intended loss represented by [the] hoard of mostly incompleted [sic] printing jobs," and the Court then varied downward two levels, giving Woronowicz a sentence at the bottom of the new Guidelines range of 41 to 51 months. The Court also credited Woronowicz's argument that the currency was produced 31 years ago, but held that this was outweighed by the fact that it could have been used at any time in the interim by anyone who was able to gain possession of it.

Woronowicz raises several mitigation arguments for the first time on appeal. We review these for plain error. *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006). Woronowicz states that this was his first felony conviction, and that statistical data would suggest that persons over 50 have a low risk of recidivism. This argument makes little sense, given that his history of criminal convictions began after the age of 50 and that he has a track record of failing to cooperate with law enforcement even after being shown

7

leniency. Woronowicz also argues that the District Court should have given him a lower sentence because of his youth at the time of the manufacture of the counterfeit currency. He acknowledges, however, that he was convicted of possession, and that possession is an ongoing offense. We conclude that the District Court did not commit plain error in imposing its sentence without specific consideration of these aspects of his life and crime.

Having determined that the District Court's sentence was procedurally sound, we will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons . . . provided." *Tomko*, 562 F.3d at 568. Sentences within the Guidelines range are "more likely to be reasonable than those that fall outside this range." *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007). Here, the District Court not only varied downward two levels to account for the unique circumstances of Woronowicz's case, but also sentenced him at the bottom of the Guidelines range. Given the Court's sound explanation of its reasons for sentencing Woronowicz to 41 months' imprisonment, we conclude that it did not abuse its discretion.

**III.**

For the foregoing reasons, we will affirm the District Court's judgment of sentence.