**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3138
_____

UNITED STATES OF AMERICA

v.

JAMAR ROGERS,
                    Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-13-cr-00107-001)
District Judge:  Honorable Richard G. Andrews
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2014

Before:  FUENTES, FISHER, and KRAUSE, *Circuit Judges.*

(Filed: February 3, 2015)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

This case involves a challenge to the substantive reasonableness of the District Court's imposition of a five-level upward variance to Jamar Rogers's sentence. For the reasons set forth below, we affirm.[1]

On a December evening in 2012, Jamar Rogers ("Rogers"), in possession of a firearm, walked to a gas station with his acquaintance, Kenyattia Graham ("Graham"). While Rogers pumped gas into a container, Corey Rollins ("Rollins") drove into the parking lot and fired nine rounds in his direction from a .40 caliber semiautomatic pistol. Graham pulled out a firearm and fired back at Rollins. Rather than retreat, Rogers peered around the gas pump in Rollins's direction, chambered a round, shot at Rollins, and then fled the scene.

Several innocent bystanders were put in jeopardy that evening. A car carrying several young children was parked in close proximity to the shoot-out. Indeed, a bullet projectile was recovered from the rear of that vehicle, the exact location where the children were sitting at the time. Fortunately, however, no one was injured. Rogers was arrested days later and forensic evidence obtained from the bullets and casings found on the scene showed that both Rogers and Graham possessed and fired hand guns the evening in question.

Rogers pleaded guilty to Count One of the Indictment, charging him as a felon in possession of a firearm. His advisory Guidelines range was calculated at twenty-four to

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

thirty months in prison.[2]  At sentencing, the Government argued for a prison sentence of fifty-four months, largely due to the serious and violent nature Rogers's offense conduct. Rogers opposed the Government's request and argued for a sentence of thirty months in prison, which was the top of the Guidelines range.  After considering the parties' arguments, the District Court imposed a sentence of forty-eight months, eighteen months above the advisory Guidelines range.  On appeal, Rogers argues that the District Court abused its discretion in granting the variance.

We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Woronowicz*, 744 F.3d 848, 851-52 (3d Cir. 2014).  The "touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).  Rogers argues that the unreasonableness of the sentence is exemplified by the fact that had he actually shot someone during this incident, his Guidelines range would have been lower than his actual imposed sentence. While cleverly crafted, this argument must fail.  In this instance, Rogers is very lucky that no one was injured.  That does not, however, change the fact that he was a felon in

---

[2] Rogers's base offense level for possession of a firearm by a person prohibited was 14. Since he used the handgun in furtherance of the Delaware state crime of Reckless Endangerment, he received a four-level enhancement pursuant to § 2K2.1(b)(6)(B) of the Sentencing Guidelines.  Rogers also received a three-level downward adjustment for acceptance of responsibility, bringing his total offense level to 15.  Furthermore, Rogers received five criminal history points, stemming from prior convictions for Possession of a Deadly Weapon by a Person Prohibited and Burglary Third Degree, Assault Third Degree, Criminal Trespass First Degree, and several drug-related offenses.

possession of a firearm who opened fire and put children's lives in danger.  We find his arguments to the contrary unavailing.

The District Court's reasoning for imposing the upward variance comports soundly with *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  The Court properly rooted its analysis in the § 3553(a) factors and ultimately concluded that Rogers's conduct was far more serious than the typical 18 U.S.C. § 922(g)(1) possession of a firearm by a convicted felon.  For instance, the District Court noted that the surveillance video of the shootout illustrated that Rogers had an opportunity to flee, yet he "made a conscious and quick choice to join in [a] gun battle" with innocent bystanders nearby.  App. 45.  Further, the Court also examined Rogers's personal characteristics in coming to this conclusion, such as the fact that he had never been employed and that he had a lengthy juvenile and adult criminal record.[3]  In fact, the District Court noted that Rogers was "one of the most potentially dangerous people" that it had sentenced and that he was "the first person that [it] sentenced to more than the top of the [G]uideline[s] range."  App. 54-55.

The District Court also rejected Rogers's argument that he was rightly carrying the gun for self-protection.  In a separate prior incident, an unknown assailant shot Rogers nine times, inflicting serious injuries.  Rogers thus argues that it was "natural" that he carry a gun for self-protection.  We disagree.  Rogers was illegally in possession of the

---

[3] Rogers also contests the District Court's characterization that he had been incarcerated for a "decent chunk" of his life starting at the age of sixteen.  He argues that at the time of sentencing, he spent less than two years in jail.  The Court's sentence, however, was not solely predicated on this passing comment—and we note that Rogers, in fact, does possess a lengthy criminal history.

firearm the night in question, and, as the District Court noted he was "carrying [the gun] for the specific purposes [*sic*] of being able to use it, and there is no possible good use that [he was] going to be able to make of that gun." App. 52. We too find this argument unpersuasive given both Rogers's prior convictions and his opportunity to remove himself from the shoot-out. Instead, Rogers made a choice to engage in the shoot-out and, by doing so, put countless innocent people in danger.

Thus, we find that the District Court properly calculated the advisory Guidelines range, gave thorough consideration to the appropriate § 3553(a) factors, and adequately explained the reasoning for its upward variance. Because Rogers fails to prove that "no reasonable sentencing court would have imposed the same sentence," we find neither procedural nor substantive unreasonableness. *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). As such, for all the reasons stated above, we affirm the District Court's sentence.