**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1884

_____

UNITED STATES OF AMERICA

v.

RUBBIN SARPONG,
                                        Appellant

_____

On Appeal from the United States
District Court for the District of New Jersey
(D.C. No. 1-21-cr-00865-001)
District Judge: Honorable Renee M. Bumb

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 27, 2023

Before: MATEY, FREEMAN, and FUENTES, *Circuit Judges*.

(Opinion filed: July 11, 2023)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Rubbin Sarpong pleaded guilty to charges arising from his role in an elaborate online dating scheme that bilked over 80 victims of roughly $3 million. Though the advisory Guidelines range for Sarpong's offenses was 97–121 months' imprisonment, the District Court varied upward and imposed a 168-month sentence given the "insidious and sinister" nature of Sarpong's crimes and his failure to express even "one ounce of remorse." Sentencing Hr'g Tr. 49–50, 52, ECF No. 16. Sarpong appealed, and his counsel moved to withdraw from representation under Local Appellate Rule 109.2(a) and *Anders v. California*, 386 U.S. 738 (1967). Finding the appeal without merit, we will grant the motion to withdraw and dismiss the appeal.

## I.

For years, Sarpong helped run a sophisticated internet scam. Sarpong's co-conspirators set up fake profiles on dating websites, often posing as members of the United States military serving abroad. The co-conspirators then wooed potential partners with promises of love and affection—and assurances that they had secured gold bars and other riches worth millions. Hooked on the hope of a fresh start, 88 victims collectively paid over $3 million to ship the promised treasure home. Sarpong served as the point of contact for those payments: he received large wire transfers from the victims, laundered the money through various accounts, and then sent the haul to his co-conspirators after taking a sizeable cut.

Sarpong pocketed over $1.1 million and spent most of it on a lavish lifestyle. He bragged about his wealth on social media, posting pictures of himself holding thousands

2

of dollars in cash. But Sarpong never reported any of his ill-gotten gains to the Internal Revenue Service, resulting in a $387,923 tax loss. All while hiding his illicit income to apply for, and receive, food stamps and other public benefits.

The scheme devastated its victims. Some "lost [their] entire savings," PSR ¶ 83, could no longer afford medical procedures, stopped "doing anything that cost money with . . . grandkids and friends," PSR ¶ 88, and could "no longer trust anyone," PSR ¶ 87. One, tragically, committed suicide after realizing she had been scammed out of nearly $100,000. Summarizing these stories, the District Court described victims who fell prey to an "awful, devious scheme because of [their] goodness" and "great empathy" for others. Sentencing Hr'g Tr. 49.

Sarpong pleaded guilty to a three-count information charging: 1) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; 2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and 3) tax evasion, in violation of 26 U.S.C. § 7201. In his Plea Agreement, Sarpong acknowledged the United States Sentencing Guidelines were "advisory, not mandatory," and that the length of his sentence ultimately rested "within the sole discretion of the sentencing judge," subject to applicable laws. App. 46. The U.S. Attorney's Office specifically stated that it "cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Rubbin Sarpong ultimately will receive." App. 46.

While the parties asked for a sentence within the advisory range of 97–121 months' imprisonment, the District Court found that "woefully deficient." Sentencing

3

Hr'g Tr. 50. Carefully consulting the factors in 18 U.S.C. § 3553(a), the District Court varied upward and imposed a 168-month sentence. While defense counsel first objected to a lack of notice, he acknowledged that the increased sentence was a variance, "not a departure." *Id.* at 55–56. He also acknowledged that the District Court had considered all the sentencing factors under 18 U.S.C. § 3553(a) before imposing the sentence. Sarpong timely appealed, and his counsel filed an *Anders* motion to withdraw his representation.[1]

## II.

"When counsel files an *Anders* brief seeking to withdraw from representation, we ask two principal questions: (1) whether counsel's brief in support of [his] motion fulfills the requirements of L.A.R. 109.2(a); and (2) whether an independent review of the record presents any non-frivolous issues." *United States v. Langley*, 52 F.4th 564, 569 (3d Cir. 2022). Our examination of these questions confirms that this appeal is without merit. So we will grant counsel's motion and dismiss the appeal.

### A.     Sufficiency of the *Anders* Brief

An *Anders* brief fulfills the requirements of L.A.R. 109.2(a) if it: 1) shows that counsel "has thoroughly examined the record in search of appealable issues"; and 2) "explains why those issues are frivolous." *Langley*, 52 F.4th at 569. "Counsel need not raise and reject every possible claim." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). Nor must counsel "anticipate and address every issue subsequently raised in [his] client's *pro se* brief, regardless of whether it was frivolous." *Langley*, 52 F.4th at 570.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Counsel must merely "conduct[] a 'conscientious investigation'" for "anything in the record that might arguably support the appeal." *Id.* (quoting *Anders*, 386 U.S. at 741, 744).

The brief filed by Sarpong's counsel is amply adequate to warrant withdrawal of representation under *Anders* and L.A.R. 109.2(a). Counsel's brief reflects a "conscientious examination" of the record, *Anders*, 386 U.S. at 744, and identifies three issues that might arguably support Sarpong's appeal: jurisdiction, the validity of Sarpong's plea, and the reasonableness and legality of his sentence. All are without merit.

First, Sarpong cannot—and does not—challenge the District Court's jurisdiction because 18 U.S.C. § 3231 vests district courts with original jurisdiction "of all offenses against the laws of the United States."

Second, any challenge to the validity of Sarpong's guilty plea would not succeed. The District Court's plea colloquy was extensive. "It reflects a voluntary, knowing, and intelligent waiver of rights and decision to enter a guilty plea." *United States v. Schweitzer*, 454 F.3d 197, 203 (3d Cir. 2006). Additionally, Sarpong's counsel states that Sarpong "has never expressed to counsel any concerns with the validity of his guilty plea," nor has he "moved to withdraw his guilty plea" or "indicated to counsel that he wishes to withdraw it." *Anders* Br. 6. Confirming the point, Sarpong's *pro se* filing does not contain any complaints about the validity of the plea, nor does it challenge any of his counsel's representations on the subject.

Third, we agree with Sarpong's counsel that any challenge to the sentence would be futile. "We review a sentence's procedural and substantive reasonableness under an

abuse of discretion standard." *United States v. Woronowicz*, 744 F.3d 848, 851 (3d Cir. 2014). The District Court correctly calculated the advisory Guidelines range, considered all the § 3553(a) factors, and thoroughly explained its "deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). And "we cannot presume that a sentence is unreasonable simply because it falls outside the advisory Guidelines range." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). On the contrary, "we will affirm" a procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

Sarpong cannot show error. The District Court concluded that Sarpong engaged in "a calculated, manipulative scheme that destroyed the lives of so many people." Sentencing Hr'g Tr. 49. Given the "seriousness of the offense" and its "many aggravating factors"—such as "the manipulation, . . . the length of the scheme, [and] the amount of the scheme"—the District Court treated the advisory range as "woefully deficient." *Id.* at 50. The court reasonably concluded that a sentence within that range would subvert "respect for the law" and fail to "address general deterrence at all." *Id.* at 50–51. And the court found Sarpong's "true abject failure to accept responsibility" the "best barometer" of the kind of sentence it should impose. *Id.* at 54. All consistent with the court's conclusion that Sarpong's scheme was "one of the most egregious frauds [it] has ever witnessed, because of the human toll that it has taken, [and] the lives that have been forever destroyed." *Id.* at 53.

6

Sarpong's 168-month sentence falls well below the combined statutory maximum of 540 months. It does not fall outside "the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). And Sarpong cannot show that "no reasonable sentencing court would have imposed the same sentence . . . for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

To sum up, the *Anders* brief "demonstrates that [Sarpong's] counsel scoured the record . . . for the best possible arguments for his client." *Langley*, 52 F.4th at 575. Meaning he "has met his obligations under *Anders*" and L.A.R. 109.2(a). *Id.*

## B. Independent Review of the Record

Although Sarpong's counsel submitted an adequate *Anders* brief, we must "proceed to the second step of our *Anders* inquiry and review the record before us, guided by counsel's brief, in search of any non-frivolous issues." *Id.* We find none. And "even if we were to consider the issues identified by [Sarpong] in his *pro se* brief, which is not required because we find his counsel's *Anders* brief adequate, our conclusion would not change." *Id.* (citation omitted).

Sarpong's *pro se* brief arguably identifies three issues: 1) whether "[t]he district court abused its discretion when it imposed a substantively unreasonable sentence by going beyond the agreed upon sentencing range of the parties and increasing [his] sentence by an upward variance," Sarpong Br. 4; 2) whether counsel was effective; and 3) whether the government "surreptitiously breached" the Plea Agreement, Sarpong Br. 4. Each issue is frivolous.

First, Sarpong cannot make any non-frivolous challenge to the substantive reasonableness of his sentence for the reasons explained above. And his suggestion that the District Court was bound by the advisory range or the parties' recommendation is incorrect. "[A] district court is in no way bound by the parties' sentencing recommendations," and "[t]he reasonableness of a sentence depends not on the district court's adherence to the range recommended by the Guidelines." *Schweitzer*, 454 F.3d at 204. Facts Sarpong acknowledged in his Plea Agreement, which states that the "Guidelines are advisory, not mandatory," and that Sarpong's sentence is subject to "the sole discretion of the sentencing judge" as guided by the relevant law. App. 46.

Second, Sarpong's suggestion of ineffective assistance of counsel is both premature and erroneous. Premature because ineffectiveness claims are generally not ripe on direct review. *See Langley*, 52 F.4th at 575 n.7. And wrong because "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

Finally, Sarpong's suggestion that the government "surreptitiously breached" the Plea Agreement is contradicted by the Agreement. Sarpong Br. 4. The Agreement disclaims that "[t]he sentencing judge may impose any reasonable sentence up to and including the statutory maximum terms of imprisonment" and that the government "cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Rubbin Sarpong ultimately will receive." App. 46.

8

## III.

For these reasons, we will grant counsel's *Anders* motion and dismiss Sarpong's

appeal.[2]

---

[2] In accordance with L.A.R. 109.2(b), the issues presented in this appeal lack legal merit, meaning Sarpong's counsel is not required to petition for writ of certiorari with the Supreme Court.

_____

FREEMAN, *Circuit Judge*, concurring in the judgment.

I agree with the majority that Sarpong's appeal should be dismissed, as my independent review of the record confirms that Sarpong has no non-frivolous issues to raise on appeal. I write separately because I disagree that Sarpong's counsel has satisfied his obligations under *Anders v. California*, 386 U.S. 738 (1967).

I.

As the majority states, counsel complies with *Anders* if he conducts "a conscientious examination" of the record and produces a brief referring to "anything in the record that might arguably support the appeal." Maj. Op. at 5 (quoting *Anders*, 386 U.S. at 744). We have held that an *Anders* brief must begin "with the production of all relevant transcripts and counsel's review of the entire record." *United States v. Langley*, 52 F.4th 564, 572 (3d Cir. 2022).

Sarpong's counsel's brief is deficient on its face. Counsel did not order transcription of Sarpong's guilty plea hearing and thus could not have reviewed a transcript before filing his brief. This alone demonstrates that counsel did not "diligently investigate[] the possible grounds of appeal." *Anders*, 386 U.S. at 742. I respectfully disagree that counsel "scoured the record . . . for the best possible arguments for his client." Maj. Op. at 7 (quoting *Langley*, 52 F.4th at 575). In *Langley* we determined that counsel had satisfied his *Anders* obligations because his brief demonstrated "that counsel scoured the record, *including both Langley's plea and sentencing hearings*, for the best

possible arguments for his client." 52 F.4th at 575 (emphasis added). No such scouring occurred here.

## II.

Upon observing that the appellate record did not include Sarpong's guilty plea hearing transcript, this Court directed counsel to obtain and file the same. Upon receipt of that transcript, and due to the *Anders* brief's deficiencies, I conducted an independent review of the full record. *See Langley*, 52 F.4th at 569 (noting that the scope of this Court's record review is "limit[ed] . . . to the issues counsel raised" only when "counsel had fulfilled her obligation under *Anders*"). That review revealed no non-frivolous issues.

The guilty plea hearing transcript shows that the District Court did not make three of Rule 11(b)(1)'s mandatory advisements: that Sarpong had a right to compel the attendance of witnesses, that he had a right to be represented by counsel not only at trial but also at every other stage of the proceeding, and that his guilty plea may result in denied citizenship and denied admission to the United States in the future. Fed. R. Crim. P. 11(b)(1)(D)–(E), (O). But the District Court's incomplete compliance with Federal Rule of Criminal Procedure 11(b)(1) does not support any viable appellate claims. Sarpong's counsel did not object to the plea colloquy, so any Rule 11(b)(1) issues would be reviewed for plain error, *United States v. Vonn*, 535 U.S. 55, 59 (2002), and Sarpong would need to show a reasonable probability that he would not have entered the plea but for the Rule 11(b)(1) errors, *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

2

On this record, Sarpong could not meet this burden. Nor does the record support any other non-frivolous issue.

III.

Counsel's failure to review or produce the plea hearing transcript prevents me from joining the majority's conclusion that counsel's *Anders* brief "is amply adequate to warrant withdrawal of representation under *Anders* and L.A.R. 109.2(a)." Maj. Op. at 5. Nonetheless, because no viable issues are available to Sarpong on this record, I concur with the judgment dismissing Sarpong's appeal.